A00A0510. SCOTT v. THE STATE.
(530 SE2d 41)

ELDRIDGE, Judge.

In March 1998, Curtis Scott was convicted by a jury of aiding the escape of a fellow prisoner. On appeal, he challenges the trial court's denial of his motion for a directed verdict of acquittal. We find that the State presented sufficient evidence to overcome the motion and affirm.

> The standard of review of the denial of a motion for directed verdict of acquittal is that from *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). On appeal, the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine the credibility of witnesses, but only determines whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. In

---

[12] 147 Ga. at 715.
[13] Id. at 714.
[14] Id.
[15] Accord 76 AmJur2d, Trusts, §§ 335, 347, 374 (1992).

addition, conflicts in the witnesses' testimony are a matter for a jury to resolve. As long as there is some competent evidence, even though contradicted, on each element necessary to prove the State's case, the jury's verdict will be upheld.

(Citations omitted.) *Hubbard v. State*, 239 Ga. App. 632, 634 (2) (521 SE2d 678) (1999).

Viewed in this light, the evidence showed the following: On October 19, 1997, Scott and Marvin Turner were incarcerated at Hays State Prison. Scott was scheduled to be released that day. At approximately 9:10 a.m., Turner approached prison officials; he had on Scott's shirt with Scott's name tag and presented them with Scott's identification. Turner said his name was "Curtis Scott" and that he was supposed to go home that day. The evidence also showed that Turner had shaved his head in order to resemble Scott and that Scott was aware of this change in Turner's appearance.

Believing that Turner was, in fact, Scott, prison officials told Turner to go back to his cell and wait until he was called. Turner went to Scott's cell and packed up Scott's belongings. When it was time for Scott's release, prison officials called for him on the intercom. Turner signed the release forms as "Curtis Scott" and left the prison with Scott's personal possessions. Scott's girlfriend, Dorcas Washington, met Turner at the prison and drove away with him.[1]

Around noon that day, the prisoners were supposed to return to their cells for a census count. The officials counted 61 prisoners, one less than the early morning count. Scott was in Turner's cell at that time. Several hours after Turner's escape, Scott complained to prison officials that he was supposed to be released that day. Prison officials locked down the prison and discovered that Turner had escaped.

At trial, Scott's cellmate testified that he saw Scott and Turner talking on the morning of the escape. A prison official testified that, after the escape was discovered, he segregated Scott, Scott's cellmate, and Turner's cellmate. At that time, Scott was not wearing a complete prison uniform. When the employee asked Scott about his uniform, Scott told him that someone had stolen his uniform and identification card about three weeks before the escape. Another prison official, however, testified that an identification card is necessary "to go anywhere and do anything," such as to go to another building, the prison store, or the gym. He also stated that it would be very difficult

---

[1] Prison records showed that Washington was Scott's "significant other," and that she had visitation privileges with Scott; it is undisputed that Scott is the father of one of her children. However, at trial, prison officials testified that, when Washington met Turner at the prison, she hugged and kissed him, then told the officials that "I sure am glad he's coming home, the children needed their father." Washington was indicted for aiding Turner's escape.

for an inmate to go for weeks without an identification card.

Further, an employee of the Chattooga County Sheriff's Department, where Scott was held following the escape, testified that Scott had confided in him that Scott traded places with Turner so Turner, who was serving a life sentence without parole for murder, could be free. The employee said that Scott told him that "if he had it to do over . . . he would do it again," referring to his assistance of Turner's escape. Another inmate overheard Scott's statement and also testified about it at trial.

In his sole enumeration, Scott claims that this evidence is insufficient to meet the State's burden of proof under *Jackson v. Virginia*, supra. We disagree.

The evidence was sufficient for a rational juror to find beyond a reasonable doubt that Scott aided Turner's escape in the following manner: Scott agreed to allow Turner to utilize his identity in order to escape; Scott assisted Turner by giving him the necessary identification; Scott went to Turner's prison cell during the noon census count to postpone the discovery that Turner was missing; Scott secured the assistance of his girlfriend to carry Turner away from the prison; and Scott waited until Turner was gone for several hours before bringing the escape to the attention of prison officials. *Jackson v. Virginia*, supra. Therefore, we affirm Scott's conviction.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 17, 2000.

. *H. Robert Hannah III*, for appellant.
*Herbert E. Franklin, Jr., District Attorney*, for appellee.